**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BRIAN CHENENSKY, individually, and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>NEW YORK LIFE INSURANCE CO., NEW YORK LIFE INSURANCE AND ANNUITY CORP., NY LIFE INSURANCE CO. OF ARIZONA, JOHN DOES 1-50 (said names being fictitious individuals), and ABC CORPORATIONS 1-50 (said names being fictitious companies, partnerships, joint ventures and/or corporations),<br><br>        Defendants. | 1:07-cv-11504 (WHP)<br><br><br><br>*Electronically Filed* |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION OF DEFENDANTS FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**Page**

I.   This Court Should Retain Jurisdiction Over This Case In The Interests Of
Convenience, Fairness and Judicial Economy ................................................................. 1

    A.   The Court Exercised Discretion Appropriately In Retaining Jurisdiction
Upon The Grant Of Summary Judgment Dismissing The FLSA Claims;
The Facts For Retention Are Even More Compelling Now .................................. 1

    B.   The Cohill Factors – And The Cases The Court Identified At The
December 14, 2012 Conference – Weigh Heavily In Favor Of Retaining
Jurisdiction ......................................................................................................... 4

    C.   In Light Of The Controlling Pachter Decision – And This Court's Prior
Rulings – There Is Nothing Novel or Complex About The State Law
Claim At Issue In This Case. .............................................................................. 9

    D.   Jurisdictional Conclusion ................................................................................ 12

II.   Chenensky's Section 193 Claim Is Ripe For Summary Judgment ................................. 13

    A.   Statement of Material Facts .............................................................................. 13

        1.   The Terms of Chenensky's Affiliation Were Contained In What
This Court Held Is A Patchwork of Several Related Agreements
And Illustrated On His Ledger .............................................................. 14

    B.   Argument ......................................................................................................... 18

        1.   Summary Judgment Should Enter Where, As Here, There Are No
Material Facts In Dispute And Plaintiff's Claims Fail As A Matter
Of Law ................................................................................................. 18

        2.   Chenensky's Compensation Did Not Violate Section 193 ..................... 18

            a.   The Import of Pachter ................................................................ 19

            b.   Applying Pachter To This Record Compels Summary
Judgment In Favor of New York Life ......................................... 20

        3.   This Court's Prior Summary Judgment Decisions Do Not Bar This
Motion ................................................................................................. 24

III.   CONCLUSION ............................................................................................................ 25

-i-

## TABLE OF AUTHORITIES

**Page(s)**

CASES

Ametex Fabrics, Inc. v. Just in Materials, Inc.,
    140 F.3d 101 (2d Cir. 1998)..................................................................................7

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986)..........................................................................................18

Balut v. Loral Elec. Sys.,
    988 F. Supp. 339 (S.D.N.Y. 1997), aff'd, 166 F.3d 1199 (2d Cir. 1998)................18

Bogan v. Northwestern Mutual Life Ins. Co.,
    953 F. Supp 532 (S.D.N.Y. 1997) ........................................................................7

Bogan v. Northwestern Mut. Life Ins. Co.,
    30 F. Supp. 2d 610 (S.D.N.Y. 1997)....................................................................7

Carnegie-Mellon Univ. v. Cohill,
    484 U.S. 343 (1988)........................................................................................4, 6

Celotex v. Catrett,
    477 U.S. 317 (1986)..........................................................................................18

Chenensky v. New York Life Ins. Co.,
    No. 07-11504, 2009 WL 4975237 (S.D.N.Y. Dec. 22, 2009) ....................14, 16, 21

Chenensky v. New York Life Ins. Co.,
    No. 07-11504, 2012 WL 234374 (S.D.N.Y. Jan. 10, 2012) ........................13, 21, 24

Chimarev v. TD Waterhouse Investor Servs., Inc.,
    280 F. Supp. 2d 208 (S.D.N.Y. 2003), aff'd, 99 F. App'x 259 (2d Cir. 2004).........8

Connelly v. Gen. Med. Corp.,
    880 F. Supp. 1100 (E.D. Va. 1995) ......................................................................5

Davidson v. Scully,
    173 F.3d 843 (2d Cir. 1999).................................................................................24

Dean Witter Reynolds, Inc. v. Ross,
    75 A.D.2d 373, 429 N.Y.S.2d 653 (1st Dep't 1980) ..............................................20

Delgado v. Pawtucket Police Dep't,
    668 F.3d 42 (1st Cir. 2012)...................................................................................5

Doddy v. Oxy USA, Inc.,
    101 F.3d 448 (5th Cir. 1996) ............................................................................8, 9

## TABLE OF AUTHORITIES
(continued)

**Page**

Drake v. Lab. Corp. of Am. Holdings,
   323 F. Supp. 2d 449 (E.D.N.Y. 2004) .....................................................................................11

Finkelstein v. Mardkha,
   495 F. Supp. 2d 329 (S.D.N.Y. 2007).......................................................................................8

Gold v. New York Life Ins. Co.,
   No. 09-3210, 2011 WL 2421281 (S.D.N.Y. May 19, 2011) ........................................... passim

Harrell v. 20th Century Ins. Co.,
   934 F.2d 203 (9th Cir. 1991) ....................................................................................................9

In re Nigeria Charter Flights Contract Litig.,
   520 F. Supp. 2d 447 (E.D.N.Y. 2007) ...................................................................................8,

Joyner v. City of New York,
   No. 11-4958, 2012 WL 4833368 (S.D.N.Y. Oct. 11, 2012) ....................................................8

Klein & Co. Futures Inc. v. Bd. of Trade of City of New York,
   464 F.3d 255 (2d Cir. 2006)......................................................................................................6

Markey v. City of Chicago,
   No. 90-6682, 1995 WL 127791(N.D. Ill. Mar. 22, 1995) ........................................................5

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
   475 U.S. 574 (1986)................................................................................................................18

Mauro v. S. New England Telecomms, Inc.,
   208 F.3d 384 (2d Cir. 2000)....................................................................................................10

Montano v. City of Chicago,
   375 F.3d 593 (7th Cir. 2004) ...................................................................................................5

Moses v. County of Kenosha,
    826 F.2d 708 (7th Cir. 1987) ..................................................................................................5

Nowak v. Ironworkers Local 6 Pension Fund,
   81 F.3d 1182 (2d Cir. 1996).....................................................................................................7

OneBeacon Am. Ins. Co., v. Colgate-Palmolive Co.,
   96 A.D.3d 541, 949 N.Y.S.2d 14 (1st Dep't 2012) .............................................................2, 3

Oneida Indian Nation of N.Y. v. Madison County,
   665 F.3d 408 (2d Cir. 2011)................................................................................................9, 10

**TABLE OF AUTHORITIES**
(continued)

**Page**

Pachter v. Bernard Hodes Grp., Inc.,
    10 N.Y.3d 609 (2008) ..................................................................................... passim

Pachter v. Bernard Hodes Grp., Inc.,
    541 F.3d 461 (2d Cir. 2008).............................................................................21, 23

Purgess v. Sharrock,
    33 F.3d 134 (2d Cir. 1994).....................................................................................4, 5

Rael Automatic Sprinkler Co. v. Solow Dev. Corp.,
    58 A.D.2d 600, 395 N.Y.S.2d 623 (2d Dep't 1977)..................................................3

Raucci v. Town of Rotterdam,
    902 F.2d 1050 (2d Cir. 1990)...................................................................................7

Rivkin v. County of Montgomery,
    838 F. Supp. 1009 (E.D. Pa. 1993) ......................................................................8, 9

Shahriar v. Smith & Wollensky Rest. Grp., Inc.,
    659 F.3d 234 (2d Cir. 2011)...................................................................................10

Sherman v. Town of Chester,
    No. 01-8884, 2001 WL 1448613 (S.D.N.Y. Nov. 15, 2001)....................................10

Shovah v. Mercure,
    ---F. Supp. 2d ---, 2012 WL 2951557 (D. Vt. July 19, 2012)..................................10

Timm v. Mead Corp.,
    32 F.3d 273 (7th Cir. 1994) ..........................................................................4, 7, 8, 9

Vargas v. Pfizer, Inc.,
    352 F. App'x 458 (2d Cir. 2009) ............................................................................24

Williams v. Dow Chem. Co.,
    326 F. Supp. 2d 443 (S.D.N.Y. 2004)......................................................................8

**STATUTES**

28 U.S.C. § 1367 ..........................................................................................................5, 9

N.Y. CPLR § 3211(a)(4).............................................................................................2, 3

New York Labor Law § 193 ................................................................................... passim

**TABLE OF AUTHORITIES**
(continued)

**Page**

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(c) ....................................................................................................................18

Local Rule 56.1 ............................................................................................................................13

Wright, et al., 13D Fed. Prac. & Proc. Juris. § 3567.3 (3d ed. 2012) .............................................4

## I.     THIS COURT SHOULD RETAIN JURISDICTION OVER THIS CASE IN THE INTERESTS OF CONVENIENCE, FAIRNESS AND JUDICIAL ECONOMY.

Per the Court's Order dated December 18, 2012 (Dkt. # 134), Defendants New York Life Insurance Company, New York Life Insurance and Annuity Company, and New York Life Insurance Company of Arizona (collectively, "New York Life") explain below the sound basis for the Court to retain jurisdiction over this case.

### A.     The Court Exercised Discretion Appropriately In Retaining Jurisdiction Upon The Grant Of Summary Judgment Dismissing The FLSA Claims; The Facts For Retention Are Even More Compelling Now.

In December 2009, after the parties completed the first phase of extensive discovery, the Court granted partial summary judgment to New York Life, dismissing Plaintiff Chenensky's overtime claims under the FLSA and New York law.  Dkt. # 47.  The Court then directed the parties to file a joint submission addressing the appropriateness of exercising supplemental jurisdiction over the remaining state law claim.  Id.

In their January 22, 2010 jointly submitted letter, the parties explained that retaining jurisdiction over Chenensky's Section 193 claims would serve the interests of judicial economy, convenience and fairness.  In large measure, the parties focused on the facts that the action had been pending before this Court for over two years and Your Honor had invested significant time and resources in addressing the merits of both the federal and state law claims.  Dkt. # 138.  As an additional ground for retention of jurisdiction, the parties discussed with the Court at January 29, 2010 conference that the pendency of the related Gold v. New York Life action in the same forum weighed in favor of this Court retaining this action.  After carefully considering the parties' explanation and relevant case law, this Court exercised its discretion under Section 1367(c) to retain this case.

The facts supporting this Court's continued exercise of jurisdiction are now more

compelling than they were in January 2010.  Since then, this Court has addressed New York

Life's motion to strike plaintiff's class allegations (Dkt. # 71), two motions for leave to amend

(Dkt. # 110  and 130) and Chenensky's motion for summary judgment (Dkt. # 110).  The Court

also has decided a motion for leave to amend (Gold Dkt. # 87) and two summary judgment

motions in the related Gold action (Gold Dkt. Nos. 33 and 87) addressing the same claims at

issue here.  All totaled, this Court has presided over this case for more than 5 years and over the

related Gold case for 3-1/2 years.   In addition, Magistrate Judge Cott has invested significant

time in this matter, having become familiar with the issues presented and the discovery record.

Finally, at the last conference in this matter, the Court set a definitive discovery end date of April

30, 2012 and stated that it would be resolving this case – one way or the other – within calendar

year 2013.  Stated differently, the end appears to be in sight.

     At the conference on December 14, 2012, the Court mentioned that part of the reason that

it retained jurisdiction was because the related Gold action also was pending before this Court

and the Court did not want to force the parties to litigate the same issues in two different courts.

While the Court dismissed the Gold case in May 2012, the same concern that led the Court to

maintain jurisdiction three years ago militates in favor of retaining jurisdiction now.  Gold,

represented by the same counsel as Chenensky, has appealed to the Second Circuit.  Having done

so, New York CPLR § 3211(a)(4) bars Gold from filing a duplicative state court action asserting

claims that are the subject of his appeal before the Second Circuit.  See CPLR § 3211(a)(4)

(providing for dismissal of an action on the ground that "there is another action pending between

the same parties for the same cause of action in a court of any state or the United States"); see

also OneBeacon Am. Ins. Co., v. Colgate-Palmolive Co., 96 A.D.3d 541, 949 N.Y.S.2d 14, 15

(1st Dep't 2012) (holding that CPLR § 3211(a)(4) barred the duplicative filing where first action

had been dismissed but was pending on appeal, noting the first action remains "pending" until the appeal is terminated); Rael Automatic Sprinkler Co. v. Solow Dev. Corp., 58 A.D.2d 600, 600, 395 N.Y.S.2d 623, 623 (2d Dep't 1977) ("if an appeal is taken from a judgment in the first action before the bringing of the second action, the first action would, by reason of the appeal, be deemed to be pending, and would prevent the plaintiff from bringing a second action until the determination of the appeal").

Although Gold has re-filed his action in state court, that duplicative filing was improper and New York Life has moved to dismiss Gold's state court action.  That motion is pending, but given the clarity of CPLR § 3211(a)(4), it is inconceivable that that matter will proceed in state court at any time before the Second Circuit disposes of Gold's appeal.  As a result, Gold's federal appeal will be his only pending action against New York Life and, if Gold were to obtain a reversal of this Court's dismissal order, the parties would be in the same predicament of having to litigate the same issues in separate courts.

The best way to achieve the economies that previously informed the Court's decision to retain jurisdiction in this case would be for this Court to rule on New York Life's summary judgment motion.  The record necessary to decide this motion is fully developed as to the sole named plaintiff, and the Court has had ample opportunity to consider the legal issues in the context of Chenensky's evolving theories and contentions.  If summary judgment is granted on the remaining state law claim, and if the decisions in this case and the Gold action are affirmed on appeal, then these related claims would be decided conclusively and the matter terminated. That would be far more expeditious and economical than sending the instant action to state court, where pre-trial proceedings would begin anew before a judge with no background in the long running dispute.  It would also avoid the potential for proceedings in different courts in the

unlikely event that Second Circuit reverses the decision in <u>Gold</u> remands back to this Court.

Conversely, if summary judgment is denied by this Court, then a prompt conference can be held to determine whether it is appropriate for this Court to continue to retain jurisdiction. That question may turn, in large part, on the reasons underlying the decision. For example, if this Court concludes that there are factual disputes as to Chenensky's Section 193 claims, it may well be that such disputes are incapable of resolution on a class-wide basis and that the only remaining step would be a trial of the individual plaintiff's claim. On the other hand, briefing may be necessary on questions of class certification. Regardless, New York Life submits that the jurisdictional issue and questions of efficiency are more appropriately addressed at the conclusion of the summary judgment process. In the meantime, we submit, the parties and the Court may be very near the goal line, with only this summary judgment motion to be resolved before the District Court proceedings are brought to a close.

**B.      The <u>Cohill</u> Factors – And The Cases The Court Identified At The December 14, 2012 Conference – Weigh Heavily In Favor Of Retaining Jurisdiction.**

The Court has directed the parties to address the propriety of its continued retention of jurisdiction under the factors set forth in <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350, n. 7 (1988). Whether to exercise supplemental jurisdiction over remaining state law claims depends upon the convenience and fairness to the parties, considerations of judicial economy and comity. <u>Id.</u>, 484 U.S. at 350 n.7 (1988); <u>Timm v. Mead Corp.</u>, 32 F.3d 273, 277 (7th Cir. 1994) (noting that "the nature of the state law claims at issue, their ease of resolution, and the actual, and avoidable, expenditure of resources can and should make the difference in a particular case); <u>Wright, et al.</u>, 13D Fed. Prac. & Proc. Juris. § 3567.3 (3d ed. 2012).

As the Second Circuit and numerous other courts have held, when "there has been substantial expenditure in time, effort, and money in preparing the dependent claims, knocking

them down with a belated rejection of supplemental jurisdiction may not be fair.  Nor is it by any means necessary." Purgess v. Sharrock, 33 F.3d 134, 138 (2d Cir. 1994) citing 28 U.S.C.A. 1367, Practice Commentary (1993) at 835; see also Delgado v. Pawtucket Police Dep't, 668 F.3d 42 (1st Cir. 2012) (upholding exercise of discretionary supplemental jurisdiction, noting that the court had presided over the case through every phase of litigation but trial and determined many substantial questions of state law at summary judgment); Montano v. City of Chicago, 375 F.3d 593, 602 (7th Cir. 2004) (holding that the district court abused its discretion by declining to exercise discretionary supplemental jurisdiction where case had been pending in federal court for over four years); Markey v. City of Chicago, No. 90-6682, 1995 WL 127791, at*1(N.D. Ill. Mar. 22, 1995) (noting that when substantial judicial resources have already been committed a district court should strongly consider retaining jurisdiction), citing Moses v. County of Kenosha, 826 F.2d 708, 711 (7th Cir. 1987); Connelly v. Gen. Med. Corp., 880 F. Supp. 1100, 1118 (E.D. Va. 1995) (noting, a year into the litigation, after summary judgment motions had been briefed:  "At this point, in the latter stages of this proceeding, the parties have invested enough time and effort in this matter.  Foisting them off on the state judiciary would be unfair and unwise, especially in light of the futility of the plaintiff's state law claims.").

This case has been on this Court's docket for five years.  In that time, the parties and the court have invested substantial time and resources into this case.  Indeed, between this case and the related Gold action, this Court has decided three summary judgment motions, four motions for leave to amend and a motion to strike class allegations – all of which touched upon the merits of Chenensky's Section 193 claims.  The Court also has heard and resolved countless discovery disputes and held numerous status and pre-motion conferences.  The parties have conducted extensive discovery, taking a dozen depositions and exchanging more than 80,000 pages of

documents.  Notably, the parties have exerted considerable time and resources litigating the Section 193 claim since the Court's decision three years ago to exercise its discretion to retain supplemental jurisdiction.  At this stage, and especially after the Court granted New York Life leave to file a new motion for summary judgment, it would be prejudicial and inefficient to force the parties to start anew in front of a state court judge unfamiliar with the action and the issues presented, especially as those issues have been framed by this Honorable Court.

This conclusion is borne out by the three decisions that the Court identified at the parties' recent December 14, 2012 pre-motion conference.  In fact, all three decisions support the parties' position that the Section 193 claim should remain before this Court.

In Cohill, the United States Supreme Court affirmed a federal district court's declination of supplemental jurisdiction over state law claims after the plaintiff had amended his complaint to remove the federal claim. 484 U.S. 343 (1988).  Notably, the amendment took place on a motion to dismiss, only *six months after the case commenced* and before the parties and the court had expended significant resources.  Indeed, the Supreme Court noted that the "single federal-law claim in the action was eliminated *at an early stage of the litigation*." Id. at 351 (emphasis added).  Conversely, this matter has been on the Court's docket for five years and with far more water under the litigation bridge.  Unlike in Cohill, the interests of judicial economy, convenience and fairness support keeping Chenensky's Section 193 claim in federal court.

Klein & Co. Futures Inc.  v. Bd. of Trade of City of New York, 464 F.3d 255 (2d Cir. 2006), is similarly distinguishable.  There, as in Cohill, the dismissal of the federal claim occurred early in the proceedings.  In fact, the Second Circuit specifically explained that courts should decline to exercise pendant jurisdiction over remaining state law claims "*in the early stages of litigation*." Id. at 262. (emphasis added).  That, of course, is not this case.  Similarly, in

Bogan v. Northwestern Mutual Life Ins. Co., 953 F. Supp 532 (S.D.N.Y. 1997), the Court

declined to exercise supplemental jurisdiction over fifteen pendent state law claims because (1)

the pendent state law claims were actively pending in state court at the time ("the state court is

undoubtedly much more familiar with the state law principles applicable to all of these claims");

and (2) that the court had not yet considered the merits of the state law claims. Id. at 550-51

("We have not probed in depth the factual basis for the state claims … and would be required to

spend considerable time and effort to do so").  This case is notably different.  Here, the Court is

faced with one pendent claim, which is not properly the subject of any concurrent state court

action, and which this Court already has examined extensively.[1]

      Other courts within this jurisdiction and beyond have exercised discretionary Section

1367(c)(3) jurisdiction in circumstances similar to and far less compelling than those presented

here.  See, e.g., Ametex Fabrics, Inc. v. Just in Materials, Inc., 140 F.3d 101 (2d Cir. 1998)

(upholding the exercise of discretionary supplemental jurisdiction because parties had engaged in

four months of discovery and had a settlement conference before magistrate judge); Nowak v.

Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1191-92 (2d Cir. 1996) (no abuse of discretion

in district court's exercise of supplemental jurisdiction where federal claim dismissal occurred

thirteen months into the proceeding); Raucci v. Town of Rotterdam, 902 F.2d 1050, 1055 (2d

Cir. 1990) (upholding exercise of discretionary supplemental jurisdiction where federal claims

were dismissed after discovery had been completed and the court had decided three dispositive

motions, noting that the state law issue was not novel because it had been recently settled by the

New York Court of Appeals); Timm, 32 F.3d 277 (upholding exercise of discretionary

---

[1]  Further, the Bogan court vacated its jurisdictional ruling on reconsideration and reserved
decision on its exercise of pendent jurisdiction pending the outcome of the plaintiffs' appeal
of the dismissal of their federal antitrust claims.  See Bogan v. Northwestern Mut. Life Ins.
Co., 30 F. Supp. 2d 610 (S.D.N.Y. 1997).

supplemental jurisdiction because "the state law claims were ripe for decision, the applicable law was straight forward, the litigation was well over a year old, and discovery, which at times had been contentious, was completed"); Doddy v. Oxy USA, Inc., 101 F.3d 448 (5th Cir. 1996) (upholding exercise of discretionary supplemental jurisdiction where case had been pending for more than two years, the parties had engaged in significant discovery and summary judgment motions were pending); Joyner v. City of New York, No. 11-4958, 2012 WL 4833368, at *6 (S.D.N.Y. Oct. 11, 2012) (retaining supplemental jurisdiction after dismissal of federal claim because matter had been pending for fifteen months, discovery has been completed, and the remaining state law claims did not present novel issues of state law); Chimarev v. TD Waterhouse Investor Servs., Inc., 280 F. Supp. 2d 208 (S.D.N.Y. 2003) (exercising discretionary supplemental jurisdiction where dispositive motions had been made as to all of plaintiff's claims, finding that judicial economy would not be served by permitting case to be revived in state court), aff'd, 99 F. App'x 259 (2d Cir. 2004); Williams v. Dow Chem. Co., 326 F. Supp. 2d 443 (S.D.N.Y. 2004) (exercising supplemental jurisdiction, finding that convenience, judicial economy and fairness militated in favor of retaining the case since the action had been pending before the court for three years and the court had invested time considering the legal issues presented); Finkelstein v. Mardkha, 495 F. Supp. 2d 329 (S.D.N.Y. 2007) (exercising jurisdiction because the case had been pending for nearly three years in federal court and the parties had completed significant discovery); In re Nigeria Charter Flights Contract Litig., 520 F. Supp. 2d 447 (E.D.N.Y. 2007) (exercising discretionary supplemental jurisdiction over state law claims where parties had been litigating in federal court for over three years and discovery had taken place, noting that a dismissal on jurisdictional grounds would frustrate the goals of judicial economy, convenience, and fairness); Rivkin v. County of Montgomery, 838 F. Supp. 1009,

1015 (E.D. Pa. 1993) (holding, after the court had presided over the case for one year and decided cross-motions for summary judgment: "Given the large investment of time (and therefore money) that both sides have invested in this action, we also believe that interests of judicial, public and private economy weigh in favor of retaining supplemental jurisdiction". Those cases support, if not compel, this Court's continued exercise of jurisdiction over this case – which is in its late stages and in which this Court has expended significant resources addressing Chenensky's state law claims.

This case may be at the finish line, with New York Life's pending motion for summary judgment weighing heavily in favor of retaining jurisdiction. Harrell v. 20th Century Ins. Co., 934 F.2d 203 (9th Cir. 1991) (holding that it was not an abuse of discretion to retain jurisdiction over pendent state law claims and rule on a statute of limitations issue that had already been fully briefed by the parties); Doddy, 101 F.3d 448 (noting that the pendency of summary judgment motions weighed in favor of continued exercise of jurisdiction); Timm, 32 F.3d 277 (upholding exercise of discretionary supplemental jurisdiction, in part, because "the state law claims were ripe for decision"). Passing this case off to the state court at this late stage would convenience no one and waste judicial resources.

**C.     In Light Of The Controlling Pachter Decision – And This Court's Prior Rulings – There Is Nothing Novel or Complex About The State Law Claim At Issue In This Case.**

In requesting briefing on the jurisdictional issue, this Court posed the question of whether Chenensky's existing claims or the claim he seeks to add as part of his third motion to amend present novel or complex issues of state law that militate in favor of declining jurisdiction in the interest of comity. They do not.

For the purpose of  28 U.S.C. § 1367(a), novel or complex issues of state law are generally issues of first impression or involve unsettled areas of state law. Oneida Indian Nation

of N.Y. v. Madison County, 665 F.3d 408, 436-440 (2d Cir. 2011) (noting that declining

jurisdiction after federal claims have been dismissed is especially appropriate where the pendent

claims present unsettled questions of state law); Sherman v. Town of Chester, No. 01-8884, 2001

WL 1448613, at *4-5 (S.D.N.Y. Nov. 15, 2001) (remand of state claims was proper given the

unsettled and important questions of state law that would better be addressed by state courts).

Put another way, a court will generally exercise supplemental jurisdiction over a state-claim if

clear legal guidance exists regarding the adjudication of the claim.  Mauro v. S. New England

Telecomms, Inc., 208 F.3d 384, 388 (2d Cir. 2000) (upholding exercise of discretionary

supplemental jurisdiction where declining jurisdiction would not further fairness or judicial

efficiency and state claims did not require resolution of any novel or unsettled areas of state law);

Shovah v. Mercure, ---F. Supp. 2d ---,2012 WL 2951557 (D. Vt. July 19, 2012) (exercising

discretionary supplemental jurisdiction, noting that although remaining claims involved intricate

state law issues, the Court of Appeals of New York had adjudicated a nearly identical case, and

issued an opinion providing a framework for adjudicating those claims).

     Nothing about Chenensky's Section 193 claim is novel or complex.  It does not present

an issue of first impression or an unsettled area of law.[2]  Quite to the contrary, Pachter v. Bernard

Hodes Grp., Inc., 10 N.Y.3d 609 (2008), a case with which this Court is wholly familiar, already

has resolved the legal question presented and is on all fours with this case.  Id. (an employer and

employee may agree by words or conduct that the employee's compensation will be the net of

commission credits and negative adjustments for expenses and commission reversals).  As

addressed below in support of New York Life's motion for summary judgment, application of

---

[2]  See Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234 (2d Cir. 2011) (upholding
exercise of discretionary supplemental jurisdiction, holding that employees' Section 193 wage
deduction claims did not raise complicated or novel issues of state law that would give the
district court discretion to deny supplemental jurisdiction over them).

the familiar principles of <u>Pachter</u> to this case should lead to the entry of summary judgment in favor of New York Life and the end of the case.  Adjudicating Chenensky's claim does not require blazing a new legal trail – it simply involves applying the controlling decision from <u>Pachter</u>.  This Court is better positioned, and better suited given the history of this case, to apply <u>Pachter</u> than a state court judge who would be wading into <u>Pachter</u> and the facts of this case for the first time.  Accordingly, the interests of comity would not be served by sending this action to state court.  <u>See</u> <u>Drake v. Lab. Corp. of Am. Holdings</u>, 323 F. Supp. 2d 449 (E.D.N.Y. 2004) (factors of judicial economy, convenience, fairness, and comity supported exercise of supplemental jurisdiction over plaintiff's state law claims after his federal claims were dismissed, where district court was uniquely familiar with underlying facts and history of litigation, and requiring plaintiff to initiate new litigation in state court would not only further delay resolution of case, but would also unnecessarily burden state court system, whereas District Court could try case as soon as discovery and motion practice was concluded).

Further, if the Court agrees with New York Life and concludes that summary judgment is appropriate, it will not need to address Chenensky's motion for leave to add a Section 193 claim pertaining to the reversal of advanced and annualized commissions.  And, even if the Court were to analyze Chenensky's proposed amendment to expand Chenensky's claim, that issue is far from complicated.  As will be made clear in the briefing on that Motion, Chenensky's new-found reliance upon the New York Attorney General opinion letters and the amendment to Section 193 in support of his effort to expand his claim to recover reversed advanced and annualized commissions is clearly and unmistakably misplaced.  That authority addresses the entirely separate and distinct issue of whether and how certain wage deductions can be made in compliance with Section 193.  The Court already knows – having addressed the issue several

times previously – that the sole legal issue presented in this case is whether the parties agreed to a compensation system where negative adjustments would be applied to commission credits to determine Chenensky's compensation.  That issue has nothing to do with the issues addressed in the opinion letters and the Section 193 amendment upon which Chenensky predicates his proposed amended pleading.[3]

Moreover, <u>Pachter</u> addressed the very claim Chenensky now seeks to add.  Unlike the opinion letters, <u>Pachter</u> involved a commissioned salesperson.  Pachter experienced "bad debt" reversals; her employer applied debits in later months to account for revenue that was not actually received by the company but for which commissions had been advanced.  <u>Pachter</u>, 10 N.Y.3d at 613, 618; Pachter compensation statement, Exh. M to Lynch Decl.  Those reversals mirror the commission reversals at issue in Chenensky's proposed claim.  The New York Court of Appeals approved of such commission reversals because, in actuality, they were not "deductions" at all under Section 193.  <u>Id.</u>  That issue is neither novel nor complex – and its application is no more complicated by virtue of the facts of this case.  This issue will be discussed further, to the extent necessary, in New York Life's opposition to any motion by Chenensky to amend the complaint.

**D.      Jurisdictional Conclusion**

While New York Life shares the Court's frustration with the slow-pace of this matter, this case is simply so close to the end that it would be imprudent to start it anew in state court.  As explained below, the Court has the opportunity to dispose of this matter via the pending summary judgment motion.  Thereafter, if Chenensky wants to pursue his claims further, he can

---

[3]    In reality, the only reason Chenensky cited the Section 193 amendment and the opinion letters is because he needed a pretextual justification for his five-year delay in asserting his proposed new claim.  This point will be more obvious if the Court is required to address Chenensky's motion to amend.

do so at the Second Circuit, possibly even seeking to consolidate his appeal with the pending appeal in the related <u>Gold</u> case.  If, however, the Court were to decline to grant summary judgment, it would then have the option to reevaluate the appropriateness of retaining jurisdiction based on a similar record at that time when the path forward is clearer.

## II.   CHENENSKY'S SECTION 193 CLAIM IS RIPE FOR SUMMARY JUDGMENT.

In its January 10, 2012 decision denying Chenensky's motion for summary judgment, the Court crystallized the sole *legal* issue in this case:  Did the parties agree to a compensation system in which negative adjustments would be applied against commissions to determine Chenensky's earnings?[4]  If so, the compensation system is perfectly lawful under <u>Pachter</u> and Chenensky's claim fails.

Under <u>Pachter</u>, where the parties to a commission-based compensation arrangement reach such an agreement, through words or conduct, the negative adjustment are <u>not</u> wage deductions under New York Labor Law § 193 ("Section 193").  The undisputed facts establish that Chenensky's compensation arrangement is on all fours with the arrangement endorsed in <u>Pachter</u>.  Chenensky understood precisely how his compensation worked and indisputably acquiesced in that system for years.  Hence, Chenensky cannot sustain his Section 193 claim.

### A.   Statement of Material Facts

Pursuant to Local Rule 56.1, New York Life has filed a separate Statement of Material Facts ("SOF"), which is incorporated by reference herein and summarized below.

---

[4]  The Court reasoned:

> But Plaintiffs misread <u>Pachter</u>.  That decision does not require an employer to identify a specific time when a commission is earned.  Pachter merely recognizes that if the parties agree that "computation of commission[s] will include certain downward adjustments … the commission will not be deemed 'earned' or vested until computation of the agreed-upon formula."  <u>Pachter</u>, 10 N.Y.3d at 617-18.  Thus, the issue is whether the parties had such an agreement.

<u>Chenensky v. New York Life Ins. Co.</u>, No. 07-11504 (Dkt # 110), 2012 WL 234374, at *5 (S.D.N.Y. Jan. 10, 2012).

**1.**   **The Terms of Chenensky's Affiliation Were Contained In What This Court Held Is A Patchwork of Several Related Agreements And Illustrated On His Ledger.**

Chenensky was a New York Life insurance agent from September 1, 2003 to November 10, 2006.  SOF ¶ 2.  He executed a "patchwork of written agreements" memorializing the terms of his engagement and his compensation at New York Life and had continual access to his ledger showing how his compensation worked.  SOF ¶¶ 3-13; <u>Gold v. New York Life Ins. Co.</u>, No. 09-3210 (Dkt. # 37), 2011 WL 2421281, at *6 (S.D.N.Y. May 19, 2011) <u>citing</u> <u>Chenensky v. New York Life Ins. Co.</u>, No. 07-11504 (Dkt. # 47), 2009 WL 4975237, at *8–9 (S.D.N.Y. Dec. 22, 2009).  He signed an Agent's Contract and a TAS Agreement acknowledging that New York Life would pay him through a ledger system and that he would generate commissions and other allowances based on his sales production.  SOF ¶ 3.  The TAS Agreement laid the foundation for Chenensky's ledger-based compensation by establishing the ledger itself.  Specifically, paragraph ¶ 9(b) states:



SOF ¶ 4.

The TAS Agreement also includes **48** references to commissions, allowances and other items being "credited" and "debited" to the ledger.  For example:



SOF ¶ 5.

     The TAS Agreement was just one of the agreements that comprised Chenensky's

compensation arrangement.  SOF ¶ 6; Gold, No. 07-3210 (Dkt. # 37), 2011 WL 2421281, at *6

citing Chenensky, 2009 WL 4975237, at *8–9.  The rest of the arrangement is reflected on his

ledger and memorialized in the several written enrollment agreements for New York Life

programs and services pursuant to which the Company provided services and Chenensky

expressly authorized New York Life to debit the corresponding expenses from his ledger.  See

e.g. SOF ¶ 8; Exh. D (telephone equipment and service):

> This is to inform you that under the terms of the New York Life Expense Allowance Program, I desire, as long as I am under the Expense Allowance Program to have the use of the following telephone equipment and service for myself and my staff and agree that, effective DECEMBER 1, 1999, a Basic Monthly Telephone Equipment and Service Charge will be debited to my ledger each month for the telephone equipment and service allotted to me.  This charge will initially be equal to the sum of items A and B below but will be subject to adjustment by New York Life to reflect equipment or rate changes.

Ex. SOF ¶ 10; Exh. F (office rent):

> It is also agreed that effective *December 1, 1999 a Basic Level Monthly Occupancy Charge will be debited to my ledger for each month, as of the first day of each month, for the space allocated to me.  This charge will be calculated in the following way.

SOF ¶ 9; Exh. E (professional liability insurance):

> I hereby request enrollment in the Professional Liability Insurance Plan (PLP) effective September 1, 2004 to August 31, 2005 offered to New York Life for its agents by the Zurich-American Insurance Company.
>
> Check One:
>     ☒  $1 Million per occurrence                ( ) $2 Million per occurrence
>         $3 Million annual aggregate               $6 Million annual aggregate
>
> I understand that beginning September 2004 and every September thereafter New York Life will remit my annual premium and I authorize New York Life to debit my agent's ledger in four equal consecutive monthly installments until the total annual amount is repaid to New York Life.  As of the commencement of each policy period from September 1 through August 31 of each year, I understand that in consideration of enhanced coverage offered under the PLP (including the automatic ERP) there will be no refunds of premium for any reason (including if my agent contract is terminated before the end of the policy period).

     As the foregoing makes demonstrably clear, Chenensky expressly acknowledged and

agreed to the debiting of expenses on the ledger established pursuant to the TAS Agreement.

SOF ¶¶ 7-12.  Likewise, the TAS Agreement specified that commission reversals would appear

as debits on Chenensky's ledger:

> When any policy referred to above terminates prior to its first anniversary, the commissions previously allowed with respect to such policy will be debited to the Agent's ledger and the amount of the commissions applicable with respect to the premium actually received by the Company will be credited to the Agent's ledger, except that, upon the termination of a policy having a regular monthly, Check-O-Matic, NYL-A-Plan, or Government Allotment premium mode on which fewer than three premiums have been paid, no commissions will be allowed for the premium or premiums actually received and

SOF ¶ 12; Exh. B.

    Consistent with that "patchwork of written agreements," as the Court described it in its

Summary Judgment decision in the Gold action, Gold, 2011 WL 2421281, at *6, New York Life

established a ledger for Chenensky upon which it entered credits and debits.  SOF ¶ 14.

Chenensky understood this system, testifying that he knew commission credits and expense

debits would be posted to his ledger and that he would be paid the balance at the end of a pay

period.[5]  SOF ¶ 16; Chenensky Dep., at 209:24-213:20, Exh. I.

    New York Life did not match up particular debits against any particular credits in the

ledger reconciliation process.  SOF ¶ 25.  Rather, debits posted to his ledger were reconciled on a

rolling basis against the existing balance.  SOF ¶ 25.  Chenensky had continual, 24/7 access to

his ledger online and – for 76 pay periods (twice per month for 38 months) – received printed

ledger statements reflecting the credits and debits applied to his ledger.  SOF ¶ 27.  He reviewed

those statements and accepted the compensation amounts reflected therein without ever objecting

to the practice of reconciling his debits and credits to determine his compensation.  SOF ¶ 30.

---

[5]   Chenensky acknowledged that, typically, New York Life determined commissions on an annualized basis, meaning that when a customer paid the first month's premium, it advanced the full First Year Commission amount to Chenensky's ledger.  New York Life did so on the assumption that product would remain in force and the customer would pay the full first year premiums for the policy over the course of the next 12 months.  SOF ¶¶ 18-19.  Chenensky understood that commissions posted to his ledger were not earned, but were subject to the policies remaining in force.  SOF ¶ 21; Chenensky dep. 216:6-14, 257:3-12, Exh. J.

**B.      Argument**

      **1.      Summary Judgment Should Enter Where, As Here, There Are No Material Facts In Dispute And Plaintiff's Claims Fail As A Matter Of Law.**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The nonmoving party may escape summary judgment only by demonstrating the existence of a genuine issue of material fact requiring trial.  See Celotex v. Catrett, 477 U.S. 317, 323-24 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), or proffer "[b]ald assertions or conjecture unsupported by evidence…."  Balut v. Loral Elec. Sys., 988 F. Supp. 339, 343 (S.D.N.Y. 1997), aff'd, 166 F.3d 1199 (2d Cir. 1998).

Here, Chenensky cannot identify a single disputed material issue of fact.[6]  The only question is a legal one:  Does that method of compensation violate Section 193?  As a careful review of the record makes clear, Chenensky received that to which he was entitled and his Section 193 claim must fail.

      **2.      Chenensky's Compensation Did Not Violate Section 193.**

Section 193 prohibits an employer from "mak[ing] any deduction from the wages of an employee."  NYLL § 193(1).  The threshold question here is whether New York Life's compensation system provides for deductions taken from an employee's "earned wage" or, rather, is a system that reconciles certain negative adjustments (debits) against commission credits as part of an agreed-upon compensation formula.  Under Pachter, a reconciliation system like that used by New York Life is perfectly lawful.

---

[6]   In fact, this is precisely the position Chenensky took when he moved for summary judgment.

a.      The Import of Pachter

As reflected in the monthly compensation statement below, the employer in Pachter credited Ms. Pachter (nee Littman) with commissions based on her monthly sales and debited from her total gross commissions "charges" for various expenses, including late payments, losses attributable to errors, a portion of her assistant's salary, uncollectible debts, travel and entertainment expenses, marketing expenses, and "miscellaneous expenses related to her work." Pachter, 10 N.Y.3d at 613 n. 1:



Lynch Decl., Exh. M (callouts added).

Even though Pachter never signed an agreement authorizing her employer to apply expense or commission reversal debits against her commission credits, the court found no Section 193 violation because Pachter agreed by her conduct that such negative adjustments would be applied as part of determining her compensable earnings.  Id. at 617-18 (employer and

commissioned sales employee "are free to add whatever conditions they may wish to their agreement," including agreeing that the computation of earnings will include downward adjustments from gross commissions for business expenses and commission reversals).[7]

The Pachter court further held that, in the absence of a clear written agreement (or where there is no written agreement at all), an employee's acquiescence in how his employer pays him is dispositive evidence that the employer's payment method comports with the parties' understanding.  Pachter v. Bernard Hodes Grp., Inc., 541 F.3d 461, 464 (2d Cir. 2008); Pachter, 10 N.Y.3d at 617-18.  The New York Court of Appeals and the Second Circuit specifically noted that where an employee "understood" and "acquiesced" in the practice of adjusting commissions before paying compensation, the employee was bound by an implied agreement that negative adjustments are part of the compensation formula.  Pachter, 10 N.Y.3d at 618; Pachter, 541 F.3d at 464.  In essence, Pachter held that the monthly compensation statements showing that credits and debits were applied to reach the amount paid to Pachter was sufficient to establish the terms of the parties' compensation arrangement.

> **b.**    **Applying Pachter To This Record Compels Summary Judgment In Favor of New York Life.**

This Court has already noted that Chenensky's focus on *when* individual commissions are actually earned reflects a misreading of Pachter.  Instead, the pivotal question is:  did the parties agree that computation of earnings[8] would include certain downward adjustments?  Chenensky,

---

[7]   Dean Witter Reynolds, Inc. v. Ross, 75 A.D.2d 373, 429 N.Y.S.2d 653 (1st Dep't 1980), also is instructive.  There, the agreement provided that debits for items like long-distance call charges were lawful negative adjustments in determining compensation.  Since the offsets were part of the calculation of the employee's compensation, they did not violate §193.

[8]   Pachter used the term "commissions" in this context to refer to the net amount paid after expenses were debited – i.e., her compensation.  Pachter, 10 N.Y.3d at 613 (noting that "commission earnings" were calculated after factoring in gross commissions, commission reversals and agreed-upon business expenses).

2012 WL 234374, at *5, citing Pachter, 10 N.Y.3d at 617.  On that question, there is not a single disputed issue of fact – let alone one that is material.

Chenensky's "patchwork" of "several related agreements," Chenensky's ledger statements and the parties' course of dealing establish a recognition and understanding by Chenensky that his periodic compensation would be determined via reconciliation of ledger credits and debits.   Gold, No. 09-3210 (Dkt. # 37), 2011 WL 2421281, at *6; Chenensky, No. 07-11504 (Dkt. # 47), 2009 WL 4975237, at *8–9.  The TAS Agreement, Agent's Contract, enrollment forms and ledger statements confirm that his agreed-upon compensation included negative adjustments for commission reversals and expense debits.

Likewise, Chenensky's admissions and Pachter-like acquiescence corroborate that agreement.  Chenensky has admitted that he understood that (i) his compensation would be the net of the credits and debits applied to his ledgers; (ii) the annualized commissions posted to his ledgers were not earned; (iii) he signed documents acknowledging his understanding of the debits applied to his ledger; (iv) if a policy did not "hold up," the commissions would be reversed off the ledger at such later date; (v) in addition to non-payment of premiums associated with advanced FYCs, there were other reasons why credits to his ledger might be reversed (i.e., failure to submit a policy delivery receipt or policy rescission); and (vi) New York Life paid him what it promised to pay under the ledger-based compensation system.   SOF ¶¶ 4-30.

With regard to acquiescence – an issue that the Court did not address in any rulings on prior summary judgment motions in this case – Chenensky had continual online access to view credits and debits applied to his ledger.  He also received bi-weekly ledger statements showing credits and debits applied to determine his overall compensation.  SOF ¶ 27.  As shown below, Chenensky's ledger statements were indistinguishable from Pachter's in all material respects:



Lynch Decl. Exh. L (callouts added).

Over the course of 38 months and 76 pay periods (and for a year after he left New York Life), Chenensky never once complained that the ledger-based compensation system was inconsistent with his understanding of his compensation arrangement. SOF ¶ 30.  Chenensky does not and cannot contest that New York Life paid him in accordance with the ledger-based compensation system for three years without objection.

The following chart summarizes the striking parallels between the Chenensky compensation arrangement and the arrangement in Pachter:

| Pachter's Compensation | Chenensky's Compensation |
|---|---|
| Hodes credited Pachter with advanced and unadvanced sales commissions.  Pachter, 10 N.Y.3d at 613. | New York Life credited Chenensky with advanced and unadvanced sales commissions. SOF ¶¶ 18-20. |
| Hodes applied debits to Pachter's monthly compensation statements for travel, entertainment and marketing expenses, miscellaneous expenses related to her work which the company advanced and she had to repay, finance charges for client late payments, | New York Life applied debits to Chenensky's ledger on a rolling basis for expenses authorized by Chenensky in writing, including rent, professional liability insurance, telephone charges and technology expenses.  SOF ¶¶ 8-13, 25). |

- 22 -

| and chargebacks for client nonpayment and "bad debt."  Id. at 613. | |
|---|---|
| Hodes reversed previously advanced commissions from later compensation statements where the customer failed to pay the company.  Id. at 613. | New York Life debited previously credited commissions on a rolling basis upon a customer's failure to pay the corresponding premium, policy rescission, etc. SOF ¶¶ 22-24. |
| Hodes did not match particular debits with particular credits on monthly compensation statements.  Id. at 613. | New York Life did not match particular debits with particular credits on Chenensky's ledger. SOF ¶ 25. |
| Pachter received monthly compensation statements showing credits and debits applied to determine her overall compensation.  Id. at 618; A1368-95. | Chenensky had continual online ledger access and received bi-weekly ledger statements showing credits and debits applied to determine his compensation.  SOF ¶ 27. |

The only distinction between Chenensky and Pachter is that Chenensky actually signed written agreements authorizing debits from his ledger – and that distinction only bolsters New York Life's motion for summary judgment.  Chenensky executed agreements expressly authorizing New York Life to debit his ledgers for expenses and commission reversals.  The employer in Pachter could cite no such writings, relying strictly on its practices, Pachter's monthly compensation statements and Pachter's acquiescence.  Yet, Pachter held that was good enough for summary judgment in favor of the employer.  Pachter, 541 F.3d 461 (directing district court to enter judgment after New York Court of Appeals answered certified question).  It would be peculiar if the employer in Pachter were entitled to summary judgment where the employer did not bother reducing its compensation arrangement to writing, while New York Life indisputably did so in a manner that all parties understood.

Here, where the compensation statements and the parties' course of dealing are the same and the evidence of the parties' agreement is stronger, summary judgment should enter for New York Life.

### 3.   This Court's Prior Summary Judgment Decisions Do Not Bar This Motion.

Chenensky will undoubtedly argue that this Court's December 2009 denial of New York Life's summary judgment motion as to his Section 193 claim should bar granting the instant motion.  That is simply untrue.  See e.g. Vargas v. Pfizer, Inc., 352 F. App'x 458 (2d Cir. 2009) (affirming grant of defendant's second motion for summary judgment after first was denied); Davidson v. Scully, 173 F.3d 843 (2d Cir. 1999) (rejecting argument that prior summary judgment denial precluded granting defendants' second motion for summary judgment, noting that the court retains the power to reconsider its own decisions at any time prior to final judgment).  Admittedly, the underlying facts have not changed since that motion, nor could they have, given that Chenensky resigned from New York Life more than six years ago.  That said, the Court's focus on New York Life's initial motion for summary judgment was when individual commissions generated by Chenensky were "earned."  This Court posed that question to both sides at oral argument and relied upon New York Life's perceived inability to answer that question clearly in denying New York Life's motion.  In the intervening years, this Court has recognized the controlling question under Pachter is different.  What matters is not when the individual commissions are earned, but whether the parties agreed that *compensation* would include both commissions and negative adjustments.  Chenensky, 2012 WL 234374, at *5.  As discussed above, on that question, there is no dispute.  New York Life and Chenensky mutually agreed to the ledger-based compensation system, through which Chenensky was paid that which he was promised.

- 24 -

III.   **CONCLUSION**

For all of the above reasons, New York Life respectfully requests that this Court continue to exercise its discretionary supplemental jurisdiction over this matter, grant New York Life's Motion for Summary Judgment and dismiss all claims herein together with such other and further relief as this Court deems appropriate.

Dated:  January 4, 2013                         Respectfully submitted,

                                                MORGAN, LEWIS & BOCKIUS LLP

                                        By:   __s/Sean P. Lynch_____
                                                Richard G. Rosenblatt (pro hac vice)
                                                Sean P. Lynch
                                                MORGAN, LEWIS & BOCKIUS LLP
                                                502 Carnegie Center
                                                Princeton, New Jersey 08540
                                                Phone: (609) 919-6600
                                                Fax: (609) 919-6701
                                                rrosenblatt@morganlewis.com
                                                slynch@morganlewis.com

                                                and

                                                Michael L. Banks (pro hac vice)
                                                MORGAN LEWIS & BOCKIUS LLP
                                                1701 Market Street
                                                Philadelphia, Pennsylvania 19103
                                                Phone (215) 963-5387
                                                Fax (215) 963-5001
                                                mbanks@morganlewis.com